UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LAURIE R. PEPPER,

                        Plaintiff,

   -v-                                          5:13-CV-951

STATE UNIVERSITY OF NEW YORK AT
CORTLAND,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                  OF COUNSEL:

THE LAMA LAW FIRM, LLP               LUCIANO L. LAMA, ESQ.
Attorneys for Plaintiff
2343 N. Triphammer Road
Ithaca, NY  14850

HON. ERIC T. SCHNEIDERMAN        COLLEEN D. GALLIGAN, ESQ.
Attorney General for the State of New York   Ass't Attorney General
Attorneys for Defendant
The Capitol
Albany, NY  12224

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

      Plaintiff Laurie R. Pepper ("plaintiff" or "Pepper") filed this action on August 12, 2013, against the defendant State University of New York at Cortland ("defendant" or "SUNY Cortland").  Pepper, a longtime employee at SUNY Cortland, brings one federal hostile work environment claim pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") ("First

Cause of Action").  She also asserts four pendent state law claims alleging violations of New York Human Rights Law ("NYHRL") sections 296(1) ("Second Cause of Action") and 296(6) ("Third Cause of Action"), New York Civil Rights Law ("NYCRL") sections 40-c and 40-d ("Fourth Cause of Action"), and a claim of intentional infliction of emotional distress ("Fifth Cause of Action").

The parties have completed discovery, and defendant has filed a motion for summary judgment, which is fully-briefed.  Oral argument was heard on February 10, 2015, in Utica, New York.  Decision was reserved.

## II. FACTUAL BACKGROUND

The following facts are gleaned from the complaint, plaintiff's deposition testimony, and defendant's Rule 7.1 Statement of Material Facts.[1]

Pepper began working at SUNY Cortland in September 1980.  Over the next three decades she worked at various positions in several different departments at the school.  In December 2010 she applied for, and was granted, a transfer from a Library Clerk 2 position in the library to a Keyboard Specialist 2 position in the heating plant.[2]  Wayne Leitch ("Leitch") and Rich Breidinger ("Breidinger") were her supervisors in the heating plant.  The remaining fifteen employees in the heating plant were males, making plaintiff the only female.

Pepper remained in a six-month probationary period when she started this new position.  A "hold" remained on her previous position in the library, essentially reserving that

---

[1] As Pepper failed to respond to defendant's Statement of Material Facts, such facts have been deemed admitted where they are "properly supported" by the record.  See N.D.N.Y. L.R. 7.1(a)(3).

[2] Pepper's duties in this new position included answering the phone, documenting service requests, relaying information to technicians, filing, preparing time sheets, scheduling appointments, and inputting data into a computer system.  Galligan Affirmation, Ex. A, ECF No. 20-18, 18–21 ("Pl.'s Dep. Tr.").

- 2 -

job for her in the event the position in the heating plant did not work out.  These two positions were of equal grade and paid identical salaries.  Leitch did not have any complaints or criticisms of plaintiff's work performance, and he gave her above average evaluations.[3]  According to defendant, Leitch expected plaintiff to successfully complete her probation without difficulty.

According to Pepper's complaint and the documents attached thereto, upon the inception of her job in the heating plant she immediately witnessed and was subjected to sexual jokes, slurs, and innuendo as well as vulgar and crude language.  Although these comments were never directed at her, she regularly overheard the inappropriate language and felt uncomfortable and intimidated.  For example, while the word "fuck" was allegedly used repeatedly in her presence, she denies that anyone ever said it directly to her.  Pl.'s Dep. Tr. 56:10–16.  She identifies Leitch as the primary offender but suggests such language was rampant among most male employees in the department.  Moreover, the only bathroom available for her use was in Leitch's office, affording little privacy.

In her complaint and during her deposition, Pepper offers few specific details of the allegedly offensive conduct and explicit language to which she was subjected.  She reportedly overheard unknown employees on an unknown date make a joke "in reference to big tits" while smoking near the entranceway to the office.  Id. at 53:19.  Further, on an unknown date, Leitch allegedly told her that he and his previous secretary used to "talk about people farting in the office."  Id. at 55:14–17.  She also claims that she often overheard

---

[3] The only issue that was raised concerned plaintiff's lack of experience with the Excel computer program.  However, she received training materials and this matter was not considered a negative mark on her performance.

Leitch and other male employees[4] taunt a male co-worker,[5] referring to him as a "homo," "fag," and "queer" and inquiring as to when he would "come out of the closet." Compl. ¶ 15; Pl.'s Dep. Tr. 41:10–11.

Pepper further alleges that on May 31, 2011, Leitch announced to the crowded break room that he intended to fail her and send her back to work in the library. She was not present in the room at the time. Additionally, she reports that when she entered the break room on the morning of June 3, 2011, Mike Padula, an employee at the heating plant, stated: "Who let her out of her cage?" Pl.'s Dep. Tr. 75:17–20. Finally, on the morning of June 6, 2011, while sitting at her desk, she allegedly overheard two unknown male employees discussing their recent sexual exploits. This conversation reportedly occurred in the break room adjacent to plaintiff's desk and involved graphic sexual content, including the words "pussy" and "fucking" and a claim that one of the men "got strange" over the weekend. Compl., Ex. 1, ¶ 50; Pl.'s Dep. Tr. 64:9–13.

This last conversation greatly upset plaintiff, who left the office in tears and called her husband. She then met with Gary Evans ("Evans"), Associate Director of Human Resources at SUNY Cortland, for one and a half to two hours. She did not want to return to the heating plant and happily agreed to return to her prior position in the library. Evans allowed her to take three days off—with pay—before returning to work in the library on June 9, 2011. Plaintiff was never advised that she failed her probationary period.

---

[4] The only other male employee plaintiff identifies is Tom Hingher, who, according to plaintiff, was also a union vice president.

[5] The identity of this male co-worker is unclear. In the complaint plaintiff identifies him as Fred Wheat. Compl. ¶ 15. However, in her EEOC complaint and during her deposition she identifies him as Steve Mize. Compl., Ex. 1, ¶ 16; Pl.'s Dep. Tr. 44:10–18.

Evans requested, and Pepper provided, a copy of a notebook in which she had documented the allegedly offensive incidents throughout her time in the heating plant. See Evans Decl., Ex. M, ECF No. 20-15. Evans conducted an investigation regarding her allegations. While he did not discover any evidence to substantiate her hostile work environment claim, he did uncover several deficiencies in Leitch's supervision. This led to Leitch's demotion and reassignment. Plaintiff alleges Evans' investigation was insufficient, delayed, and not carried out according to policy. She further claims Leitch was neither interviewed nor counseled regarding her allegations.

Pepper never voiced any concerns about her work environment to Leitch, Breidinger, Evans, or anyone else in the administration before June 6, 2011. Defendant reports that the two prior female employees who held the same position in the heating plant did not complain about such language or behavior, and left their jobs for retirement or promotional reasons. Finally, during the relevant time, SUNY Cortland had a policy prohibiting sexual harassment and discrimination. It also had procedures in place through which employees could lodge complaints regarding harassment and discrimination. Plaintiff received a copy of this policy and procedure, received training on same, and knew how to file a complaint, but never did so. She suggests that she did not complain because she felt intimidated and worried that a complaint would jeopardize her probationary employment.

On January 5, 2012, the Equal Employment Opportunity Commission ("EEOC") received a complaint from Pepper. In this complaint, she recounted the above allegations of crude language, sexual slurs and jokes, and profanity. On June 14, 2013, she received a Right To Sue letter from the EEOC, indicating that it "is unable to conclude that the information obtained established violations of the statutes." Compl. Ex. 3. This action

followed.

Pepper continues to work as a Library Clerk 2 in the library at SUNY Cortland.

## III. DISCUSSION

SUNY Cortland argues that it is entitled to summary judgment because: (1) Pepper cannot establish a prima facie hostile work environment claim pursuant to Title VII or NYHRL, which apply identical standards; and (2) the allegedly offensive behavior was not, as a matter of law, outrageous or extreme to support an IIED claim. Plaintiff does not offer any legal argument in opposition regarding the IIED claim.

### A. Motion for Summary Judgment—Legal Standard

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Id. at 250 n.4. The failure to meet this burden warrants denial of the motion. Id. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553.  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

**B. Hostile Work Environment—First, Second, and Third Causes of Action**

In order to establish a prima facie hostile work environment claim, under Title VII or the NYHRL,[6] a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014) (internal quotation marks omitted).  This standard includes objective and subjective components; "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive."  Id.  Courts are to consider the totality of the circumstances during this inquiry.  Id.

In addition to making the above showing, a plaintiff must also establish a basis for imputing the offensive conduct to the employer. Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 103 (2d Cir. 2010).  Where, "the alleged harasser is in a supervisory position over

---

[6] "[C]laims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 107 n.10 (2d Cir. 2011) (per curiam) (internal quotation marks omitted).

the plaintiff, the objectionable conduct is automatically imputed to the employer." Id. However, the defendant employer may be permitted to establish a narrow affirmative defense, subject to proof by a preponderance of the evidence. Id. In order to benefit from this defense, the employer must show that (1) it "exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior," and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. (internal quotation marks omitted).

SUNY Cortland argues that the allegedly offensive conduct to which Pepper was subjected in the heating plant between December 20, 2010, and June 6, 2011, was not sufficiently severe or pervasive to alter the conditions of her work environment and satisfy the objective component of a prima facie claim. Defendant also asserts that the allegedly offensive conduct of its employees cannot be properly imputed to SUNY Cortland because plaintiff never complained about the conduct before June 6, 2011, and Evans took prompt action to remedy the situation on that date. Defendant is correct on both accounts.

First, although Pepper's experience in the heating plant obviously made her uncomfortable, she fails to identify any evidence in the record to create an issue of material fact regarding the objective prong of her hostile work environment claim. Even considered in the aggregate, the reported sexual innuendo, misconduct, offensive language, and unequal treatment are neither sufficiently severe nor pervasive to support such a claim. It is undisputed that plaintiff merely overheard the offensive language, none of it was directed at her. Further, most of the incidents occurred on unknown dates and involved unnamed offenders. Plaintiff offers only her own deposition testimony and notes, which do not provide specific details of the allegedly offensive incidents. Notably absent is any deposition or

affidavit from Fred Wheat or Steve Mize, who could have potentially offered supporting accounts of the allegedly offensive behavior.

In short, the evidence in the record is insufficient to establish that the conduct in the heating plant was severe or pervasive enough for a reasonable person to find it hostile or abusive. See Mormol v. Costco Wholesale Corp., 364 F.3d 54, 58–59 (2d Cir. 2004) (finding that six incidents in one month were "far from being pervasive" and collecting cases in which the allegedly offensive conduct was "not sufficiently severe to overcome its lack of pervasiveness").

Second, even if Pepper could establish the objective prong of her hostile work environment claim, the conduct cannot be imputed to SUNY Cortland. Defendant had procedures in place through which employees could lodge complaints regarding harassment and discrimination. Plaintiff received a copy of this policy and procedure, received training on same, knew how to file a complaint, and received an Employee Handbook. However, she never lodged a complaint—either formally through established administrative procedures or informally to her supervisors—prior to June 6, 2011. She thus unreasonably failed to take advantage of the available preventive or corrective opportunities offered by SUNY Cortland.

Moreover, once Pepper complained to Evans on June 6, 2011, he took reasonable and prompt corrective action. He met with her for almost two hours, granted her a transfer back to her prior position in the library, gave her three days off with pay, collected evidence from her, and initiated an investigation that ultimately led to the demotion and transfer of Leitch. Therefore, as a matter of law, defendant has established an affirmative defense by a preponderance of the evidence in the record.

Accordingly, SUNY Cortland's motion for summary judgment will be granted with

respect to the hostile work environment claims.

### C. Intentional Infliction of Emotional Distress—Fifth Cause of Action

SUNY Cortland argues that the allegedly offensive behavior was not, as a matter of law, outrageous or extreme to support an IIED claim. Plaintiff does not offer any legal argument in opposition.

In order to succeed on her IIED claim under New York law, Pepper must show: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999) (citing Howell v. N.Y. Post Co., 81 N.Y.2d 115, 121 (1993)). Whether the alleged conduct may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance. See Howell, 81 N.Y.2d at 121.

Pepper's IIED claim falls woefully short of this demanding standard. The only specific incident that allegedly produced severe emotional distress occurred on June 6, 2011. Plaintiff reportedly overheard two unknown male employees discussing their recent sexual exploits. According to plaintiff, she became so upset that she left the office in tears, called her husband, and reported the incident to Evans. Such conduct is simply not extreme or outrageous. Nor can it reasonably be inferred that the unknown male employees intended such conduct to cause plaintiff distress or recklessly ignored the possibility that their conversation could trigger such distress. No reasonable juror could conclude otherwise.

Accordingly, SUNY Cortland's motion for summary judgment will be granted with respect to the IIED claim.

## IV. CONCLUSION

Even viewed in the light most favorable to Pepper, the severity and pervasiveness of the allegedly offensive conduct do not rise to the level required for a hostile work environment claim under Title VII or the NYHRL. Moreover, the reported conduct cannot be properly imputed to defendant because plaintiff failed to report it and, when she finally did, Evans responded promptly, appropriately, and effectively. Therefore, no reasonable juror could find that she faced a hostile work environment. Plaintiff similarly fails to point to any evidence in the record to support her IIED claim.

Finally, it is noted that SUNY Cortland did not seek summary judgment on the Fourth Cause of Action, which alleges a violation of New York Civil Rights Law §§ 40-c, 40-d. Pursuant to 28 U.S.C. § 1367(c)(3), supplemental jurisdiction over this remaining state claim is declined.

Therefore, it is

ORDERED that

1. Defendant State University of New York at Cortland's motion for summary judgment is GRANTED;

2. The First, Second, Third, and Fifth Causes of Action are DISMISSED with prejudice; and

3. The Fourth Cause of Action is DISMISSED without prejudice.

IT IS SO ORDERED.

The Clerk of the Court is directed to enter judgment accordingly and close the file.

_____
United States District Judge

Dated: May 27, 2015
       Utica, New York.